J-S74001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.M.Z., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.M.Z., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1594 EDA 2016 |

Appeal from the Decree Entered May 5, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000347-2016,
FID: 51-FN-004123-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: C.L.Z., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.M.Z., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1595 EDA 2016 |

Appeal from the Decree Entered May 5, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000346-2016,
FID: 51-FN-004123-2013

BEFORE:  OTT, J., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED OCTOBER 24, 2016**

Appellant, C.M.Z. ("Father"), files these consolidated appeals from the

decrees entered May 5, 2016, in the Philadelphia County Court of Common

---

* Former Justice specially assigned to the Superior Court.

Pleas, by the Honorable Jonathan Q. Irvine, granting the petition of the Department of Human Services ("DHS") and involuntarily terminating Father's parental rights to his minor, dependent children, C.M.Z., Jr., a male born in September of 2005, and C.L.Z., a female born in November of 2002 (collectively, "the Children"), pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).[1] Counsel for Father ("Counsel") has also filed a petition to withdraw her representation. After careful review, we grant Counsel's petition to withdraw and affirm the trial court's decrees.

The trial court summarized the relevant procedural and factual history, in part, as follows:

> On July 22, 2013, DHS received a General Protective Services (GPS) report alleging that there was no food in the home for two days and the [C]hildren were accustomed to not eating often. The report also alleged that the [Children's mother, H.N.S. ("Mother")], had filed a Protection from Abuse petition against [Father]. The report was substantiated.
>
> On July 31, 2013, In-Home Protective Services (IHPS) was implemented by the Community Umbrella Agency (CUA).
>
> From August 6, 2013 until September 19, 2013, CUA tried on several occasions to visit the home. They were unsuccessful on most attempts. CUA discovered that there were ongoing issues with no food in the home. Furthermore, used needles were found inside the home and yard.
>
> On October 23, 2013, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated

---

[1] By separate decrees entered the same date, the trial court involuntarily terminated the parental rights of the Children's mother, H.N.S. ("Mother"). Mother has not filed an appeal and is not a party to the instant appeal.

> C.M.Z. and C.L.Z. dependent and ordered DHS to supervise the family.
>
> On October 25, 2013, DHS received a GPS report alleging that [M]other tested positive for cocaine and opioids and [F]ather tested positive for cocaine, opioids and marijuana. DHS obtained an OPC [(Order for Protective Custody)] for the [C]hildren and they were subsequently placed in foster care.
>
> A shelter care hearing was held on October 28, 2013 before the Honorable Jonathan Q. Irvine. Judge Irvine lifted the OPC and ordered the temporary commitment of the [C]hildren to the care and custody of DHS.

Trial Court Opinion (T.C.O.), 6/16/16, at 1-2 (unpaginated).

The trial court held permanency review hearings on February 11, 2014, May 15, 2014, September 24, 2014, December 30, 2014, April 1, 2015, August 19, 2015, and December 23, 2015. DHS Exhibits 3 and 4. Throughout these reviews, the trial court maintained the Children's commitment and placement and assessed their permanency goals. *Id.*

DHS filed petitions to terminate Father's parental rights on April 20, 2016. The trial court held a termination hearing on May 5, 2016, at which DHS presented the testimony of the following witnesses: Teanna Brown, CUA case aide; Shantel Dowdell, CUA case supervisor; and Tisha Morales, CUA social worker. Additionally, Father testified on his own behalf. By decrees entered May 5, 2016, the trial court involuntarily terminated the parental rights of Father pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).[2]

---

[2] Upon review, it appears the trial court additionally entered separate orders changing the Children's permanency goal to adoption. N.T. at 44. As Father does not appeal these orders, any such claims related thereto are not
*(Footnote Continued Next Page)*

- 3 -

On May 20, 2016, Father, through appointed counsel, filed notices of appeal, which this Court consolidated *sua sponte* on June 13, 2016. Father's Counsel did not file concise statements of errors complained of on appeal as required by Pa.R.A.P. 905(a)(2) and Pa.R.A.P. 1925(a)(2)(i), but instead contemporaneously filed statements pursuant to Pa.R.A.P. 1925(c)(4), noting that there are no non-frivolous issues to be raised on appeal and indicating her intent to file a petition and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967). **See** Pa.R.A.P. 1925(c)(4) (counsel for criminal defendants may file of record and serve on the judge a statement of intent to file an **Anders** brief in lieu of filing a statement under Rule 1925(b)); **see also Interest of J.T.**, 983 A.2d 771 (Pa. Super. 2009) (holding that the **Anders** procedure set forth in Rule 1925(c)(4) is proper in a termination of parental rights case).[3] Counsel filed an **Anders** brief on July 20, 2016, and a petition to withdraw on July 26, 2016.

When counsel files an **Anders** brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **In re S.M.B.**, **A.M.B., & G.G.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004).

*(Footnote Continued)* ────────────

preserved. Pa.R.A.P. 903(a) (a notice of appeal shall be filed within thirty days after the entry of the order from which the appeal is taken).

[3] By order dated June 13, 2016, this Court directed Counsel to file statements of errors complained of on appeal by June 23, 2016. In response, on June 17, 2016, counsel submitted correspondence referencing her contemporaneously filed statements pursuant to Pa.R.A.P. 1925(c).

In *In re V.E. & J.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may therefore petition this Court for leave to withdraw representation and submit an *Anders* brief. *In re S.M.B.*, *A.M.B.*, *& G.G.B.*, 856 A.2d at 1237. To withdraw, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)).

We further review Counsel's *Anders* brief for compliance with the requirements set forth in *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009).

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 178-79, 978 A.2d at 361. "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." ***Commonwealth v. Goodwin***, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (quoting ***Commonwealth v. Wright***, 846 A.2d 730, 736 (Pa. Super. 2004)).

Counsel has satisfied the first requirement of ***Anders*** by filing a motion to withdraw, wherein she asserts that she has made a conscientious review of the record and determined the appeal would be frivolous. Likewise, Counsel has satisfied the second requirement by filing an ***Anders*** brief that complies with the requirements set forth in ***Santiago***, ***supra***. With respect to the third requirement, Counsel has attached to the motion to withdraw a copy of the letter sent to Father advising him of his rights, and enclosing a copy of the ***Anders*** brief. Hence, we conclude that Counsel has complied with the procedural ***Anders*** requirements and proceed to a review of the merits.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 616 Pa. 309, 47 A.3d 817, 826 (2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will."

> *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M., T.R.M., T.J.M., T.A.M., & N.D.M.*, 620 Pa. 602, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, controls the termination of parental rights, and requires a bifurcated analysis, as follows:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (2), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's termination order pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> &ast;&ast;&ast;
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> &ast;&ast;&ast;
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing,

furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first examine the court's termination of Father's parental rights under Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002)).

The record supports the trial court's finding of grounds for termination of Father's parental rights under Section 2511(a)(2). Father did not attempt to meet his single case plan objectives to seek mental health treatment, drug and alcohol treatment/screening, parenting classes, and visitation with

the Children. N.T. at 21, 24-25, 29-30. Father admitted missing three months of mental health treatment, which resulted in his case being closed. Since re-enrollment in January 2016, he has been "noncompliant," missing "a few weeks here or there." *Id.* at 36-37. Despite Father's assertion that he was currently attending drug and alcohol treatment and had completed parenting classes, he provided no documentation to DHS. *Id.* at 21, 24-25, 30, 35, 37-38. With regard to missed drug screenings, Father explained that he was "busy" and "life caught up to him." *Id*. at 36.[4]

Moreover, documentation from ARC ("Achieving Reunification Center") noted Father's case was closed in January 2014 as Father's "attempt[s] to address everything were unsuccessful." *Id.* at 24-25, 30. Shantel Dowdell, case supervisor, believed ARC's statement means "[Father] did not attend as he should have been." *Id.* at 24-25. Further, Father has not visited the Children since October 29, 2015. *Id.* at 9. Lastly, Father expressed his desire for the Children to remain with Foster Mother, acknowledging she can provide more for the Children than he can. *Id.* at 38.

Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for their

---

[4] We note that Shantel Dowdell, CUA case supervisor, could not testify as to whether Father was ever actually called for screenings subsequent to the two that were completed. *Id*. at 29, 36.

physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. *See id.* Thus, we find the trial court had sufficient grounds for termination of Father's parental rights under Section 2511(a)(2). As noted above, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d at 384.

We next determine whether termination was proper under Section 2511(b). With regard to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]*, [533 Pa. 115, 122-23, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily

depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

In the instant matter, the trial court found that termination was proper under Section 2511(b), explaining as follows:

> In the instant matter, the children look to the foster mother for love, care and support. The foster mother provides the children with their day to day needs. Additionally, she meets all of their medical and academic needs. The children do not look to the father for love, care and support. The children do not want to visit with the father. Furthermore, the children want to be adopted by the foster mother. Moreover, the testimony indicated that the children would not suffer permanent emotional harm if the father's parental rights were terminated. Lastly, the social workers testified that it would be in the best interest of the children if the father's parental rights were terminated and the children's goal changed to adoption.

T.C.O. at 5 (citations to record omitted).

The record likewise corroborates the trial court's termination order pursuant to Section 2511(b). As referenced above, Father has not visited with the Children since October 29, 2015. Teanna Brown, who supervised the visitation between Father and the Children, indicated that the Children did not enjoy visitation with Father. N.T. at 9. When asked to explain this conclusion, Ms. Brown indicated, "[C.L.Z.] usually would get upset during

- 12 -

visits. Sometimes we had to go out and talk to her about even coming in for the visits. . . . C.L.Z. usually didn't want to visit." *Id.* at 13. In addition, one or both children sought to end visits early. *Id.* at 14. Although C.L.Z. "would like to reach out to [Father]" when she gets older, both Children have indicated that they do not want to see Father. *Id.* at 9, 16, 23. Therefore, both Ms. Brown and Ms. Dowdell opined that the Children would not suffer permanent emotional harm and/or damage if Father's parental rights were terminated. *Id.* at 12-13, 24. They both further expressed that it would be in the Children's best interests for Father's rights to be terminated. *Id.*

Moreover, the Children are in a pre-adoptive home with Foster Mother, whom they "look to for love, care and support" and "to take care of their everyday needs," as opposed to Father. *Id*. at 9-10, 14. Moreover, and more significantly, the Children want to be adopted by and remain with Foster Mother. *Id.* at 16, 25-26. Thus, as confirmed by the record, the emotional needs and welfare of the Children favor termination. Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under Sections 2511(a)(2) and (b).

Based on the foregoing independent analysis of the trial court's termination of Father's parental rights, we agree with Counsel for Father that

the within appeal is wholly frivolous.[5]  As such, we affirm the decrees of the trial court and grant Counsel's petition to withdraw.

Decrees affirmed.  Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/24/2016

---

[5] Further, we note that our independent review of the record did not reveal any additional, non-frivolous issues overlooked by counsel.  **See Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citing **Commonwealth v. Goodwin**, 928 A.2d 287 (Pa. Super. 2007) (*en banc*)).